UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLANET ECLIPSE, LLC and PLANET ECLIPSE LIMITED, Plaintiffs, | : | |
| v. | : | C.A. No. 04-194T |
| X-TREME ENTERPRISES, INC., Defendant. | : | |

**PLAINTIFFS' OBJECTION TO MOTION OF DEFENDANT, X-TREME ENTERPRISES, INC., TO SET ASIDE ENTRY OF ITS DEFAULT**

Plaintiffs, Planet Eclipse, LLC and Planet Eclipse Limited, hereby object to the Motion of Defendant, X-treme Enterprises, Inc., To Set Aside the Entry of Its Default. In support of the their objection, Plaintiffs rely on the Memorandum of Law filed concurrently herewith.

PLANET ECLIPSE LLC and
PLANET ECLIPSE LIMITED,
By its attorneys,

Craig M. Scott, Esq. (#4237)
Ralph N. Gaboury, Esq. (#6638)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Date: October 22, 2004

10

**CERTIFICATION**

To:

Michael K. Glucksman, Esq.
109 Airport Road
Warwick, RI 02889

I hereby certify that a true copy of the within was sent by certified mail, return receipt requested to the above, on the 22nd day of October, 2004.

[signature]

*H:\Clients\Planet Eclipse\Pleadings\Obj to Motion to Vacate Default (rng).doc*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLANET ECLIPSE, LLC and PLANET ECLIPSE LIMITED, Plaintiffs, | : | |
| v. | : | C.A. No. 04-194T |
| X-TREME ENTERPRISES, INC., Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANT, X-TREME ENTERPRISES, INC.'S, MOTION TO SET ASIDE ENTRY OF DEFAULT**

**Introduction**

Plaintiffs, Planet Eclipse, LLC and Planet Eclipse Enterprises, Inc. ("Plaintiffs"), design, manufacture and sell a variety of equipment related to the recreational sport of Paintball. In the United States, and throughout the world, Paintball has become a multi-million dollar industry, with over 9 million players in over forty countries. Plaintiffs' most popular Paintball product is the ECLIPSEBLADE® electronic Paintball "trigger frame" (the "ECLIPSEBLADE®"). A "trigger frame" is the portion of a Paintball gun that houses the trigger and firing mechanism.[1]

Defendant, X-treme, competes with Plaintiffs in the Paintball market. In the summer of 2003, Plaintiffs learned that X-treme was selling an electronic trigger frame it called the "Xonic Electronic Marker" (the "Xonic"). It immediately became clear to Plaintiffs that X-treme had intentionally copied and incorporated the distinctive trade dress of the ECLIPSEBLADE® into the Xonic. (*See* Complaint ¶¶ 22, 30.) In addition, X-treme also copied the ECLIPSEBLADE®

[1] The barrel and stock portions of a Paintball gun are referred to as the Paintball "marker."

Operating Manual nearly word-for-word into the X-treme Operating Manual, and also copied the ECLIPSEBLADE® packaging. (*See* Complaint ¶¶ 24-25, 31-32.)

On July 30, 2003, Plaintiffs' counsel delivered a cease a desist letter to X-treme. (*See* Complaint ¶ 35.) On September 22, 2003, X-treme's counsel delivered a letter to Plaintiffs' counsel alleging that X-treme is "making changes in the trade dress of their product . . . in the hope that this will avoid the expense and inconvenience of litigation." (*See* Complaint ¶ 36.) Despite X-treme's promise to change its product, X-treme continued to sell the infringing Xonic trigger frame without any alterations to the trade dress, packaging or operating manual. On May 20, 2004, Plaintiffs filed the present action, seeking damages and injunctive relief for trade dress infringement, false advertising, unfair competition, and copyright infringement.

Shortly before X-treme's deadline to respond to the Complaint, X-treme contacted Plaintiffs' counsel, and again offered to settle the dispute. Over the course of three and half months, Plaintiffs' granted X-treme several informal extensions of time to respond to the Complaint while the parties negotiated the terms of a comprehensive Settlement Agreement and Consent Final Judgment and Permanent Injunction. During the week of September 13, 2004, X-treme agreed to the final terms of these settlement documents, and promised — not once, but twice — to execute the documents and return them to Plaintiffs' counsel by overnight mail. X-treme, again, did not follow through on its promises.

X-treme now seeks to set aside the entry of default, and tries to excuse its dilatory behavior by claiming it was engaged in "good faith" settlement negotiations. X-treme has failed to show any "good cause" to set aside the entry of default. Accordingly, X-treme's motion should be denied.

**Facts**

On May 20, 2004, Plaintiffs served on X-treme the Summons and Complaint. An Answer or other responsive pleading was due on June 9, 2004. Shortly before X-treme's Answer was due, John Vozenilek, a California attorney retained by X-treme, contacted Plaintiffs' counsel and requested an informal extension of time for X-treme to file an Answer because X-treme was interested in settling the dispute. (The Affidavit of Craig M. Scott, Esq. ("Scott Aff.") is attached hereto as Exhibit A, ¶ 4.) Plaintiffs' counsel approved this request. (*Id.*) In July and August, 2004, X-treme, through its second California lawyer, Timothy Nguyen, requested several additional informal extensions of its deadline to file an Answer. (*Id.* at ¶ 5.) Believing that X-treme was engaging in good faith settlement negotiations, counsel for Plaintiffs approved each of these additional requests. (*Id.* at ¶ 6.)

Over the course of almost three months, counsel for the parties engaged in settlement negotiations. (Scott Aff. ¶ 7.) These discussions culminated in a draft Settlement Agreement and Consent Final Judgment and Permanent Injunction (the "Settlement Documents"), which were forwarded to Mr. Nguyen on September 3, 2004. (*Id.* at ¶ 8; a true and correct copy of the Settlement Documents is attached hereto as Exhibit B.) Plaintiffs approved one final extension of time requested by X-treme to allow for time to make final adjustments to the Settlement Documents. (*Id.* at ¶ 9.) This final deadline was set for September 15, 2004. (*Id.*.)

As of Monday, September 13, 2004, X-treme had not responded to Plaintiffs' counsel with regard to the draft Settlement Documents that had been forwarded ten days earlier. (Scott Aff. at ¶ 10.) Counsel for Plaintiffs faxed a letter to Mr. Nguyen on September 13th and requested his comments on the Settlement Documents as the deadline to answer the Complaint was two days away. (*Id.*; a true and correct copy of the September 13, 2004 letter from Craig

M. Scott, Esq. to Timothy Nguyen, Esq. is attached hereto as Exhibit C.) Later that same day, Mr. Nguyen faxed a letter to Plaintiffs' counsel asking for two changes to the Consent Final Judgment and Permanent Injunction (the "Consent Judgment"). (Scott Aff. ¶ 11; a true and correct copy of the September 13, 2004 letter from Timothy Nguyen, Esq. to Craig M. Scott, Esq. is attached hereto as Exhibit D.) Mr. Nguyen proposed no changes to the Settlement Agreement. (*Id.*)

The following day, on Tuesday, September 14, 2004, Mr. Nguyen left Plaintiffs' counsel a voice mail confirming that once his changes were made to the Consent Judgment, the parties could proceed to execute the Settlement Documents. (Scott Aff. ¶ 12; a true transcript of Mr. Nguyen's September 14, 2004 voice mail message is attached hereto as Exhibit E.) Mr. Nguyen specifically stated that "[o]ther than [these changes], I don't see any other problems and I think these are minor issues so you know I would like to go forward with it." (*Id.*) In a telephone conference later that day, Plaintiffs' counsel agreed to incorporate one of Mr. Nguyen's proposed changes to the Consent Judgment, and Mr. Nguyen agreed to relinquish the other proposed change. (*Id.* at ¶ 13.) Counsel for Plaintiffs promptly faxed to Mr. Nguyen the Consent Judgment incorporating this change and confirmed the agreement that the Settlement Documents would be executed by X-treme and delivered by overnight mail to Plaintiffs' counsel for delivery on Wednesday, September 15, 2004. (*Id.*; a true and correct copy of the September 14, 2004 letter from Craig M. Scott, Esq. to Timothy Nguyen, Esq. is attached hereto as Exhibit F.)

The executed Settlement Documents did not arrive on September 15, 2004, as promised. (Scott Aff. ¶ 14.) On Thursday, September 16, 2004, Plaintiffs' counsel faxed to Mr. Nguyen a letter inquiring as to when the executed Settlement Documents would be delivered. (The

Affidavit of Ralph N. Gaboury, Esq. ("Gaboury Aff."), is attached hereto as Exhibit G, ¶ 3; a true and correct copy of the September 16, 2004 letter from Ralph Gaboury, Esq. to Timothy Nguyen, Esq. is attached hereto as Exhibit H.) Instead of forwarding the executed Settlement Documents as promised, Mr. Nguyen faxed a letter that day to Plaintiffs' counsel demanding additional changes to the agreed-to Settlement Documents. (Scott Aff. ¶ 16; a true and correct copy of the September 16, 2004 letter from Timothy Nguyen, Esq. to Craig Scott, Esq. is attached hereto as Exhibit I.) Plaintiffs refused to revisit the stipulated settlement terms, and confirmed the same by letter dated September 17, 2004. (Scott Aff. ¶ 17; a true and correct copy of the first September 17, 2004 letter from Craig M. Scott, Esq. to Timothy Nguyen, Esq. is attached hereto as Exhibit J.)

In a telephone call that same day, Friday, September 17, 2004, Mr. Nguyen revisited his position and confirmed to Plaintiffs' counsel that the Settlement Documents would be executed by X-treme in the form Mr. Nguyen had originally agreed to three days earlier, and that the executed Settlement Documents would be couriered to Plaintiffs' counsel for delivery on Monday, September 20, 2004. (Scott Aff. ¶ 18.) Counsel for Plaintiffs' confirmed this in a second letter to Mr. Nguyen dated September 17, 2004. (*Id.*; a true and correct copy of the second September 17, 2004 letter from Craig M. Scott, Esq. to Timothy Nguyen, Esq. is attached hereto as Exhibit K.) Contrary to Mr. Nguyen's Affidavit, he did not communicate with Plaintiffs' counsel on Saturday, September 18, 2004, or at any other time during that weekend. (Scott Aff. ¶ 19.)

The Settlement Documents did not arrive on Monday, September 20, 2004. (Scott Aff. ¶ 20.) Instead, Plaintiffs' counsel received a voice mail message that day from attorney Michael Glucksman, stating that X-treme had retained him as its third and new counsel in this case.

(Gaboury Aff. ¶ 5.) As it was then clear that X-treme entered into a settlement with Plaintiffs, X-treme twice misrepresented the delivery of the executed settlement documents, and that the time to answer after three months of extensions had expired, Plaintiffs applied to this Court for entry of default on September 21, 2003 — six days after X-treme's final informal deadline to answer had passed. On September 29, 2004, default entered against X-treme. (A true and correct copy is attached hereto as Exhibit L.)

**Argument**

Rule 55(c) provides that the Court may set aside entry of default only "for good cause shown." Fed. R. Civ. P. 55(c). Although there is no "precise formula [for the good cause analysis]," *KPS & Associates, Inc. v. Designs by FMC, Inc.*, 381 F.3d 1, 12 (1st Cir. 2003) (quoting *Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir. 1989), "[t]he burden of demonstrating good cause for the removal of a default rest[s] with [the movant]." *Id.* at 14 (citing *Bond Leather*, 764 F.2d at 938). X-treme, as the movant, has the burden of showing that good cause exists for the removal of the default under the multi-factor analysis cited by X-treme in its supporting memorandum.[2] (Memoranda [sic] in Support of Motion of Defendant, X-treme Enterprises, Inc., To Set Aside the Entry of Its Default ("Def. Mem.") at 2.) *See KPS & Assocs.*, 318 F.3d at 14 ("Thus, [movant] had the burden to demonstrate a lack of willfulness.") X-treme has failed to meet that burden.

[2] These seven factors include:

> (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; (7) the timing of the motion [to set aside entry of default]. *KPS & Assocs.*, 318 F.3d 1, 12.

**X-treme's Willfulness**

As to the first factor, X-treme's "willfulness," X-treme's allegation that "the default was in no sense willful but was rather the result of hopes that the case could be settled," directly contradicts X-treme's conduct in the days leading up to the entry of default. The parties had in fact settled the case. The parties spent months negotiating the terms of a comprehensive settlement agreement, which was reduced to writing, and X-treme promised — not once, but twice — to execute the final version of the Settlement Documents and forward them to Plaintiffs' counsel. It reneged on these promises.

Moreover, the allegation in the Affidavit of Timothy S. Nguyen stating that "[t]he settlement effort finally broke off on September 18, 2004[,]" (Nguyen Aff. ¶ 5) is false. There was simply no communication between the parties on Saturday, September 18, 2004, or at any time over that weekend. (Scott Aff. ¶ 19.) To the contrary, Mr. Nguyen had assured Plaintiffs' counsel on the day before — for the second time — that X-treme agreed to the terms of the settlement and would be executing the Settlement Documents and having them delivered the following Monday. (Scott. Aff. ¶ 18.) Instead of receiving the executed Settlement Documents on Monday, September 20th, as promised, Plaintiffs' counsel received a voice mail message from attorney Glucksman, stating that X-treme had retained him as its local counsel. (Gaboury Aff. ¶ 5.) Because Mr. Nguyen had twice misrepresented that the Settlement Documents would be executed and delivered to Plaintiffs' counsel, Plaintiffs rightfully sought entry of default. (Scott Aff. ¶ 22.) Accordingly, X-treme's duplicitous behavior with regard to the settlement negotiations negates any credibility as to its allegation that it relied "on the good progress of the settlement negotiations." (Nguyen Aff. ¶ 4.) Hence, X-treme's conduct was entirely "willful," and X-treme has failed to meet its burden as to this first factor.

**X-treme's Bad Faith Conduct During Settlement Negotiations**

X-treme's conduct also goes directly to two factors absent in its memorandum: "the nature of the defendant's explanation for the default" and "the good faith of the parties." In *KPS & Associates,* cited in X-treme's memorandum (Def. Mem. at 2), the First Circuit refused to overturn a district court's ruling that denied a motion to vacate entry of default. 318 F.3d at 15. The district court determined that one of the attorneys for the moving party had attempted to deceive the court in connection with several factual inconsistencies the attorney attested to with regard to the entry of default.[3] *Id.* at 14-15. The First Circuit upheld the district court's ruling denying the defendant's motion, stating that the district court rightfully gave significant weight to these factors in light of the defendant's duplicitous behavior. *Id.* at 15. The First Circuit commented that "[w]e have noted before that 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Id.* (quoting *Aoude v. Mobile Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989).

As discussed above, X-treme's "explanation for the default" is that it relied on the "good progress" of the settlement negotiations. This "explanation" is not at all credible given that the case settled and X-treme reneged on that settlement. This explanation is further extirpated by attorney Nguyen's misrepresentation in his affidavit that "the settlement effort finally broke off on [Saturday,] September 18, 2004," when Nguyen had in fact stated the day before that the Settlement Documents would be executed and delivered to Plaintiffs' counsel the following Monday. (Scott Aff. ¶ 18.) Nguyen's conduct shows that X-treme was not acting in good faith.

[3] Specifically, the attorney in *KPS* alleged that he had arranged for the Answer to be timely filed, but that a temporary secretary at his law firm had placed an incorrect way-bill on the Federal Express package. 318 F.3d at 9.

Because of X-treme's repeated misrepresentations with regard to its "good faith" settlement negotiations, these factors strongly weigh against vacating the default. *KPS & Assocs.*, 318 F.3d at 15.

**X-treme Fails to Show a Meritorious Defense**

X-treme's only offering that it has a meritorious defense is the conclusory statement that "questions of infringement and unfair competition are inherently factually intricate and intense." (Def. Mem. at 3.) This bald statement simply is not evidence of a meritorious defense. Accordingly, X-treme has failed to meet its burden under this factor as well, particularly in light of its pre-suit agreement to revamp its product line to avoid infringing Plaintiffs' intellectual property rights.

**Plaintiffs Will Be Prejudiced**

As to the *KPS* factor of "whether setting [the default] aside would prejudice the adversary," contrary to X-treme's contentions, Plaintiffs will be prejudiced if the default is set aside. Plaintiffs expended months of effort in connection with the settlement negotiations and to negotiate and draft the Settlement Documents that X-treme repeatedly promised to execute. In the interim, Plaintiffs did not pursue injunctive relief to restrain further distribution and sale of the infringing Xonic trigger frame. Forcing Plaintiffs to now litigate X-treme's liability on the merits, in the wake X-treme's agreement to settle the case, would not only be manifestly unfair, but would result in substantial additional expense to Plaintiffs. X-treme has failed to meet its burden with regard to this factor as well.

**Conclusion**

Accordingly, for each of the foregoing reasons, X-treme has failed to sustain its burden of proving that "good cause" exists to set aside the entry of the default, and Plaintiffs respectfully request that the Court deny the motion.

PLANET ECLIPSE LLC and
PLANET ECLIPSE LIMITED,
By its attorneys,

Craig M. Scott, Esq. (#4237)
Ralph N. Gaboury, Esq. (#6638)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Date: October 22, 2004

**CERTIFICATION**

To:

Michael K. Glucksman, Esq.
109 Airport Road
Warwick, RI 02889

I hereby certify that a true copy of the within was sent by certified mail, return receipt requested to the above, on the 22nd day of October, 2004.

____________________

*Planet Eclipse/Pleadings/Memo Obj to Motion to Vacate Default (rng)*