UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PLANET ECLIPSE, LLC
and PLANET ECLIPSE LIMITED

v. C.A. No. 04-194T

X-TREME ENTERPRISES, INC.

## MEMORANDUM AND ORDER

Lincoln D. Almond, United States Magistrate Judge

This matter comes before the Court on Defendant X-treme Enterprises, Inc.'s ("Defendant") Motion to Set Aside the Entry of its Default (Document No. 8) filed pursuant to Fed. R. Civ. P. 55(c). This Motion has been referred to me for determination. 28 U.S.C. § 636(b)(1)(A); Local Rule 32(b). A hearing was held on November 29, 2004.[1] After reviewing the Memoranda submitted, listening to the arguments of counsel and conducting independent research, Defendant's Motion is DENIED.

### Statement of Facts

Plaintiffs Planet Eclipse LLC, a Rhode Island limited liability company, and Planet Eclipse Limited, a foreign corporation, (hereinafter collectively referred to as "Plaintiffs") design, manufacture and sell paintball equipment. Plaintiffs filed the present action on May 21, 2004, seeking injunctive and monetary relief against Defendant's alleged intentional copying of the Plaintiffs' ECLIPSEBLADE ® device. The ECLIPSEBLADE ® device is "an electronic trigger

[1]At the hearing, this Court advised the parties that this Motion presented a judgment call that could go either way. The Court took the matter under advisement, and told the parties that it would not issue its decision until December 15 in order to give the parties an additional opportunity to resolve the matter on their own agreed terms. This procedure was employed in large part because Defendant's counsel noted in his September 27, 2004 letter to Plaintiffs' counsel that he hoped "to facilitate this case's settlement (which I understand was very close at hand) rather than diverting our energy and attention to a motion to vacate." See Aff. of Glucksman, Ex. 1.

14

frame designed to be mounted to an 'autococker' paintball marker." Compl. ¶ 21. The purpose of an electronic trigger frame, like the ECLIPSEBLADE ®, is to permit the person firing a paintball gun to achieve faster rates of firing. Id. ¶ 17, 18.

Through its Complaint, Plaintiffs allege that Defendant copied the ECLIPSEBLADE ® trade dress into its "Xonic Electrical Marker," an electronic trigger frame sold by Defendant. Id. ¶¶ 29, 30. Counts I and II of Plaintiffs' Complaint allege claims for federal trade dress infringement, false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a), Count III alleges false advertising in violation of 15 U.S.C. § 1125(a), Count IV alleges copyright infringement in violation of 17 U.S.C. § 101, and Count V alleges common law unfair competition. See id.

The Court's docket in this matter reflects the following facts: Plaintiffs filed their Complaint on May 21, 2004, and Defendant was served with the Summons and Complaint by Certified Mail on May 25, 2004.[2] Defendant's answer was due on or before June 14, 2004. Defendant did not answer or otherwise respond to the Complaint prior to June 14, 2004 and has not answered or otherwise responded to date.

On September 27, 2004, Attorney Michael Glucksman entered his appearance on behalf of Defendant. Plaintiffs applied for entry of default on September 21, 2004, and the Clerk entered default against Defendant on September 29, 2004. Then, on October 12, 2004, Defendant filed the instant motion seeking to have the default vacated. Plaintiffs' objection was filed shortly thereafter. Both parties filed memoranda of law with supporting affidavits and exhibits. Those documents assist the Court in ascertaining the parties conduct between May and September of 2004.

---

[2] Plaintiffs' return of service, evidencing that Defendant had been served, was filed September 1, 2004.

In support of its Motion to Vacate, Defendant submitted the Affidavits of Timothy S. Nguyen, in-house counsel for Defendant in California, and Michael Glucksman, local counsel for Defendant. In his Affidavit, Mr. Nguyen states that the parties were in "good faith negotiations" toward settlement until September 18, 2004, and that those settlement discussions "broke off"on that date. Aff. of Nguyen at ¶¶ 2-5. Mr. Nguyen also admits that Defendant "did not file its answer in a timely fashion" because it relied upon the "good progress" of the settlement talks, as well as the "informal extensions of time"to answer that were granted by the Plaintiff. Id. ¶ 4. In his Affidavit, Mr. Glucksman notes that he was retained by Defendant, through a retainer agreement received on September 23, 2004. Aff. of Glucksman at ¶ 2. He also states that he sent a letter dated September 27, 2004 to Plaintiffs' counsel seeking agreement to file an answer "out-of-time." Id. ¶ 8; Ex. 1. At the hearing, Mr. Glucksman indicated that Defendant, as a cost-saving measure, did not initially retain local counsel while it tried to work out a settlement with the Plaintiffs.

Plaintiffs' Memorandum of Law and supporting documents confirm that the parties conducted settlement negotiations after the Complaint was filed. Plaintiffs submitted the Affidavit of their counsel, Craig Scott, in which he states that he did agree to several informal extensions of time for Defendant to answer the Complaint, but also states that a firm answer deadline of September 15, 2004 was established. Aff. of Scott ¶¶ 4-6; 9. Defendant has not disputed the existence of the September 15, 2004 deadline.

Prior to September 15, 2004, the settlement discussions and negotiations had resulted in the parties drafting and negotiating a draft Settlement Agreement and Consent Final Judgment and Permanent Injunction. Id. ¶ 8. On September 3, 2004, the draft settlement documents were forwarded to Defendant's counsel. Id. ¶ 8; Ex. B. As of September 13, 2004, Mr. Scott had not

received any response from Defendant and sent a letter reminding Defendant's counsel that Defendant's answer was due on September 15, 2004. Id. ¶ 10; Ex. C. According to Mr. Scott, Mr. Nguyen left a voicemail message for Mr. Scott on September 14, 2004, confirming that he would "like to go forward with" the settlement. Id. ¶ 12; Ex. E. On September 14, 2004, Plaintiffs' counsel apparently revised the settlement documents to include a change proposed by Defendant, and sent them to Defendant, confirming that the changes were final, and that the documents would be signed and returned by overnight mail. Id. ¶ 13; Ex. F. On September 17, 2004, Mr. Scott sent a letter to Defendant noting he had not yet received the signed documents, and that if the documents were not received by September 20, 2004, he would proceed without further notice. Id. ¶ 18; Ex. J. At the hearing, Defendant's counsel conceded that, during this period, his client never sought an extension of the September 15 answer deadline or otherwise attempted to file a responsive pleading as required by Fed. R. Civ. P. 12.

**Standard**

Rule 55(c) of the Federal Rules of Civil Procedure provides that an entry of default may be set aside for "good cause shown." The First Circuit Court of Appeals has noted that the "good cause" analysis lies within the "sound discretion" of the district court and is a "mutable standard, varying from situation to situation." Coon v. Grenier, 867 F.2d 73, 75- 76 (1st Cir. 1989) (citations omitted). The First Circuit has declined to set forth a rigid standard for determining "good cause," instead encouraging a consideration of the facts of each case, however, the Court has indicated that at least three factors serve a useful purpose in any consideration of whether good cause has been demonstrated: (1) the willfulness of the default, (2) the prejudice to the non-moving party in vacating default and (3) whether a meritorious defense is presented. See Coon, 867 F.2d at 73; citing United

States v. One Parcel of Real Estate, 763 F.2d 181,183 (5th Cir. 1985). The burden of demonstrating "good cause" to vacate the entry of default falls upon the moving party, in this case, Defendant. See KPS & Assocs., Inc. V. Designs by FMC, Inc., 318 F.3d 1, 14 (1st Cir. 2003).

**A. Willfulness**

The first factor considered by the Court is whether Defendant's behavior was willful. This factor considers the nature of the underlying reasons that default was entered against the party. If the party acted deliberately and purposefully in violation of the Federal Rules of Civil Procedure, this weighs in favor of default. If, on the other hand, default is entered against a defendant who was unaware of the pendency of a suit, or had not been served, then the defendant's behavior is not willful, and this factor weighs in favor of vacating default. See Coon, 867 F.2d at 76-77 (defendant did not act willfully in failing to answer where he was unaware of pendency of lawsuit until after default was entered).

In this case, the record is clear that Defendant was unquestionably aware of the suit, and admitted that it failed to file its answer in a timely fashion. See Aff. of Nguyen ¶ 4; Aff. of Glucksman ¶ 8. In fact, Defendant took absolutely no steps to preserve any defenses or answer any claim or reserve its right to do so at some later date. Federal Rule of Civil Procedure 8 merely requires a party "state in short and plain terms the party's defenses to each claim asserted..." Defendant failed to meet even this very liberal standard. Defendant knowingly allowed the September 15 answer deadline to pass without taking any action whatsoever to meet its obligations under the Fed. R. Civ. P. See Conetta v. Nat'l Hair Care Ctrs. Inc., 236 F.3d 67, 75 (1st Cir. 2001) (conscious decision to ignore lawsuit and not answer was willful); and Victoria's Secret Stores v. Artco Equip. Co., Inc., 194 F. Supp. 2d 704, 733 (S.D. Ohio 2002) (conclusory assertions of good

faith insufficient to overcome "inference of willfulness" that arises from Defendant's intentional failure to answer).

**B. Prejudice**

Although the passage of time, by itself, is insufficient to support a finding that an adversary would be prejudiced by the removal of default, see Coon 867 F.2d at 77, "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion," Johnson v. Dayton Elec. Mfg. Co.,140 F.3d 781, 785 (8th Cir. 1998), will support a finding that the non-movant would be prejudiced by the vacation of default. In the present case, the Court finds that the removal of default would cause prejudice to Plaintiffs.

First, through its Complaint, Plaintiffs seeks monetary and injunctive relief, and has refrained from advancing its claims against Defendant for several months based on their representations. In fact, Plaintiffs first brought this dispute to Defendant's attention by way of a cease and desist letter sent on July 30, 2003. If the only relief sought by Plaintiffs were monetary, the interest accrued and the monetary damages potentially recoverable would act to "make them whole," however, in this case, Plaintiffs have alleged irreparable damage and have refrained from proceeding on injunctive claims. Thus, they may not be able to recoup for all losses suffered as a result of the delay.

Moreover, the timing of the events in this case lead the Court to conclude that default should not be vacated. Based on the documents submitted by both parties, the Court finds the evidence presented by Plaintiffs to be credible. Plaintiffs apparently made good faith efforts to resolve the matter, and preserve their rights, while providing Defendant informal extensions of time. The final extension of time was given by Plaintiffs through September 15, 2004, and Plaintiffs' counsel even took the good faith step of giving Defendant's counsel a reminder on September 13, 2004 of the

impending due date. Defendant, on the other hand, took no proactive steps to conform its actions to the Federal Rules of Civil Procedure, despite being aware of the suit, and engaging in settlement negotiations. Defendant acted at its peril and with reckless disregard for its obligation to respond to Plaintiffs' Complaint.

Reviewing the entire course of dealings between the parties, it appears that Mr. Nguyen, Defendant's in-house counsel, believed that he had negotiated a final settlement of the case. Mr. Nguyen's decision to take no action on Defendant's behalf in connection with the September 15 deadline and his failure to retain local counsel prior to that deadline plainly suggests that he thought the parties had a settlement in place. In fact, Mr. Nguyen's letter dated September 13, 2004 proposes two changes to conform the documents to the "original settlement agreement." Aff. of Scott, Ex. D (emphasis added). This Court will give Defendant and Mr. Nguyen the benefit of the doubt and will not conclude that they engaged in "bad faith" settlement discussions aimed solely at stringing this matter along. However, this Court does find credible evidence in the record that the parties had reached a settlement agreement, at least in principle, and that the settlement negotiated by Mr. Nguyen on Defendant's behalf was either "second-guessed" and rejected after the fact by others at X-Treme[3] or was beyond the scope of his actual (not apparent) authority to act on Defendant's behalf. Therefore, based both on the timing and background of Defendant's actions and the types of damages sought, the Court finds that Plaintiffs would be prejudiced by the vacation of default.

[3] In his letter dated September 16, 2004, Mr. Nguyen attempts to revisit the settlement documentation and makes additional requests on behalf of Tony Perez for changes to the documents. Mr. Perez is apparently one of X-Treme's executives who had reviewed the settlement documents.

**C. Meritorious Defense**

In order to present a "meritorious defense" Defendant need not "demonstrate a likelihood of success on the merits," instead, it must merely "plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Coon 867 F.2d at 77 (citations omitted.) The Coon Court described this requirement as a "squatty hurdle."

Defendant offers three arguments in support of its "meritorious defense" to this action: first, that the questions presented are "inherently factually intricate and intense," second, that it undertook settlement negotiations in good faith, and third, that it sought removal of default in a timely fashion. Unfortunately, none of these arguments clear the hurdle of evidencing a meritorious defense.

Although the Court does not doubt that the claims presented are "factually intricate and intense," it is Defendant's burden to proffer "specific facts" which support a defense to this case. See Viera Avilés v. Suiza Dairy Corp., 206 F.R.D. 338, 341 (D.P.R. 2002). Moreover, the parties' good faith negotiations and the fact that Defendant sought removal of default in a timely fashion also do not evidence a meritorious defense. None of the arguments set forth by Defendant address the actual substance of the claims made in the Complaint. Instead of offering a cognizable defense to the actual claims made in the Complaint, Defendant has attempted to reiterate the reasons default was entered against it. Therefore, this Court concludes that Defendant has not presented evidence of a meritorious defense.

**D. Other Factors**

This Court is mindful that the three factors outlined above are not the only considerations in determining a motion to vacate default. In addition to those three factors, the Court is also persuaded that the entry of default should not be vacated on the basis of policy reasons. On the one hand, the

Court's refusal to remove the entry of default is disfavored, because it forecloses their opportunity to have the case determined on its merits. See KPS & Assocs., 318 F.3d 1, 13. On the other hand, however, Rule 55 of the Federal Rules provides an "[i]nvaluable incentive for parties to comply with court orders and rules of procedure...", "encourages expeditious resolution of litigation" and "provides a useful remedy when a litigant is confronted by an obstructionist adversary..." KPS & Assocs., 318 F.3d 1, 13; citing to Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2nd Cir. 1993). In the present case, the Court finds that Defendant was afforded numerous opportunities to comply with the Federal Rules of Civil Procedure and knowingly failed to do so. Defendant has simply not shown "good cause" for its failure to respond to Plaintiffs' Complaint in a timely fashion. Therefore, the policy reasons do not support Defendant's motion to remove default.

**Conclusion**

For the reasons stated, Defendant's Motion to Set Aside the Entry of its Default (Document No. 8) is DENIED.

LINCOLN D. ALMOND
United States Magistrate Judge
December 15, 2004