UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLANET ECLIPSE, LLC and PLANET ECLIPSE LIMITED, Plaintiffs, | : | |
| v. | : | C.A. No. 04-194T |
| X-TREME ENTERPRISES, INC., Defendant. | : | |

**PLAINTIFFS' RESPONSE TO DEFENDANT, X-TREME ENTERPRISES, INC.'S, RULE 72(a) OBJECTION TO MEMORANDUM AND ORDER**

Plaintiffs, Planet Eclipse, LLC and Planet Eclipse Limited, hereby respond to defendant, X-treme Enterprises, Inc.'s, Rule 72(a) Objection to the December 15, 2004 Memorandum and Order of Magistrate Judge Almond. In support of their response, plaintiffs rely on the Memorandum of Law filed concurrently herewith.

PLANET ECLIPSE, LLC and
PLANET ECLIPSE LIMITED,
By its attorneys,

Craig M. Scott, Esq. (#4237)
Ralph N. Gaboury, Esq. (#6638)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Date: January 11, 2005

19

**CERTIFICATION**

To:

Michael K. Glucksman, Esq.
109 Airport Road
Warwick, RI 02889

I hereby certify that a true copy of the within was sent by First Class mail to the above, on the 12th day of January, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PLANET ECLIPSE, LLC
and PLANET ECLIPSE LIMITED,

Plaintiffs,

v. C.A. No. 04-194T

X-TREME ENTERPRISES, INC.,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT, X-TREME ENTERPRISES, INC.'S, RULE 72(a) OBJECTION TO MEMORANDUM AND ORDER**

## I. INTRODUCTION

The Objection of defendant, X-treme Enterprises, Inc.'s ("X-treme"), fails to demonstrate that the December 15, 2004 Memorandum and Order of Magistrate Judge Almond is contrary to law or clearly erroneous. In fact, the sequence of events that led up to the entry of default, largely conceded by X-treme, is that X-treme did not timely file an answer to the Complaint notwithstanding knowledge of its filing and effective service of process, that its failure to answer was deliberate and that it never presented a meritorious defense to this action. Significantly, even its Objection to the Memorandum and Order remains devoid of any articulation of a meritorious defense.

Plaintiffs, Planet Eclipse, LLC and Planet Eclipse Limited (collectively, "Planet Eclipse"), and X-treme are competitors in the Paintball market. Planet Eclipse sells an electronic trigger frame called the ECLIPSEBLADE®. X-treme sells an electronic trigger frame called the "Xonic Electronic Marker" (the "Xonic"). Planet Eclipse alleges in this litigation that X-treme intentionally copied and incorporated the distinctive trade

dress of the ECLIPSEBLADE® into the Xonic. (*See* Complaint ¶¶ 22, 30.) In addition, X-treme copied the ECLIPSEBLADE® Operating Manual nearly word-for-word into the X-treme Operating Manual, and copied the ECLIPSEBLADE® product packaging. (*See* Complaint ¶¶ 24-25, 31-32.)

## II. FACTS PERTINENT TO THE ENTRY OF DEFAULT[1]

X-treme's pattern of delay and deceit long pre-dated the filing by Planet Eclipse of the instant Complaint for damages and injunctive relief arising from X-treme's federal trade dress and copyright infringement, false advertising and false designation of origin, and common law unfair competition. It began in July, 2003, when Planet Eclipse forwarded a cease and desist letter to X-treme demanding that the manufacture and sale of the Xonic product be halted. X-treme agreed to do so. On September 22, 2003, X-treme's counsel delivered a letter to plaintiffs' counsel representing that X-treme is "making changes in the trade dress of their product . . . in the hope that this will avoid the expense and inconvenience of litigation." (*See* Complaint ¶ 36.)

Despite X-treme's promise to change its product, X-treme continued to sell the infringing Xonic trigger frame without any alterations to the trade dress, packaging or operating manual. On May 20, 2004, plaintiffs served on X-treme the Summons and Complaint. An answer or other responsive pleading was due on June 9, 2004. Shortly before X-treme's answer was due, John Vozenilek, a California attorney retained by X-treme, contacted plaintiffs' counsel and requested an informal extension of time for X-treme to file an answer because X-treme wanted to settle the dispute. Plaintiffs' counsel approved this request. In July and August, 2004, X-treme, through its second

---

[1] The facts set forth herein are supported by Planet Eclipse's October 22, 2004 Memorandum in Opposition to the Motion to Set Aside the Entry of Default and accompanying Affidavits.

California lawyer, Timothy Nguyen, requested several additional informal extensions of its deadline to file an answer. Believing that X-treme was engaging in good faith settlement negotiations, counsel for plaintiffs approved each of these additional requests.

Over the course of almost three months, counsel for the parties engaged in settlement negotiations. These discussions culminated in a draft Settlement Agreement and Consent Final Judgment and Permanent Injunction (the "Settlement Documents"), which were forwarded to Mr. Nguyen on September 3, 2004. Plaintiffs approved one final extension of time requested by X-treme to allow for time to make final adjustments to the Settlement Documents. This final deadline was set for September 15, 2004. As the Magistrate Judge correctly observed, X-treme conceded at the hearing that it "never sought an extension of the September 15 answer deadline or otherwise attempted to file a responsive pleading as required by Fed. R. Civ. P. 12." (Memorandum and Order, p. 4.) X-treme's Objection to the Memorandum and Order appropriately does not dispute the September 15, 2004, deadline to file an answer to the Complaint.

As of Monday, September 13, 2004, X-treme had not responded to plaintiffs' counsel with regard to the draft Settlement Documents that had been forwarded ten days earlier. Counsel for plaintiffs faxed a letter to Mr. Nguyen on September 13th "reminding Defendant's counsel that defendant's answer was due on September 15, 2004." (Memorandum and Order, p. 4.) Later that same day, Mr. Nguyen faxed a letter to plaintiffs' counsel asking for two changes to the Consent Final Judgment and Permanent Injunction (the "Consent Judgment"). Mr. Nguyen proposed no changes to the Settlement Agreement.

The following day, on Tuesday, September 14, 2004, Mr. Nguyen left plaintiffs' counsel a voice mail confirming that once his changes were made to the Consent Judgment, the parties could proceed to execute the Settlement Documents. Mr. Nguyen specifically stated that "[o]ther than [these changes], I don't see any other problems and I think these are minor issues so you know I would like to go forward with it." In a telephone conference later that day, plaintiffs' counsel agreed to incorporate one of Mr. Nguyen's proposed changes to the Consent Judgment, and Mr. Nguyen agreed to relinquish the other proposed change. Counsel for plaintiffs promptly faxed to Mr. Nguyen the Consent Judgment incorporating this change and confirmed the agreement that the Settlement Documents would be executed by X-treme and delivered by overnight mail to plaintiffs' counsel for delivery on Wednesday, September 15, 2004.

The executed Settlement Documents did not arrive on September 15, 2004, as promised. On Thursday, September 16, 2004, plaintiffs' counsel faxed to Mr. Nguyen a letter inquiring as to when the executed Settlement Documents would be delivered. Instead of forwarding the executed Settlement Documents as promised, Mr. Nguyen faxed a letter that day to plaintiffs' counsel demanding additional changes to the agreed-to Settlement Documents. Plaintiffs refused to revisit the stipulated settlement terms, and confirmed the same by letter dated September 17, 2004.

In a telephone call that same day, Friday, September 17, 2004, Mr. Nguyen changed his position and confirmed to plaintiffs' counsel that the Settlement Documents would be executed by X-treme in the form Mr. Nguyen had originally agreed to three days earlier, and that the executed Settlement Documents would be couriered to

plaintiffs' counsel for delivery on Monday, September 20, 2004. Counsel for plaintiffs' confirmed this in a second letter to Mr. Nguyen dated September 17, 2004.

The Settlement Documents did not arrive on Monday, September 20, 2004. Instead, plaintiffs' counsel received a voice mail message that day from Attorney Michael Glucksman, stating that X-treme had retained him as its third and new counsel in this case. As it was then clear that (1) X-treme entered into a settlement with plaintiffs; (2) X-treme twice misrepresented the delivery of the executed Settlement Documents; and (3) the time to answer after three months of extensions had expired, plaintiffs applied to this Court for entry of default on September 21, 2004. On September 29, 2004, default entered against X-treme.

## III. <u>The Clearly Erroneous Standard of Review</u>

As noted by defendant, a district court reviews a magistrate judge's nondispositive order under a "clearly erroneous" standard. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see Sunview Condo. Assoc. v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997)(citing 28 U.S.C. § 636(b)(1)(A) as empowering a district court to reconsider and set aside a magistrate judge's order on a nondispositive matter when the order is clearly erroneous or contrary to law). "This means that we must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, we 'form a strong, unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999). Here, a review of the record makes it clear that the Magistrate Judge made no mistake in denying defendant's motion to remove the entry of default, as detailed in the Magistrate Judge's

well-reasoned findings of fact and conclusions of law. Accordingly, the Magistrate Judge's findings of fact and conclusions of law must be accepted by this Court.

The Magistrate Judge correctly applied Fed. R. Civ. P. 55(c) to the facts of this case. The rule provides that the Court may set aside entry of default only "for good cause shown." Fed. R. Civ. P. 55(c). What constitutes "good cause" is within the "sound discretion" of the Court. *Coon v. Grenier*, 867 F.2d 73, 75-76 (1st Cir. 1989) (citations omitted). Although there is no "precise formula [for the good cause analysis]," *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (quoting *Coon v. Grenier,* 867 F.2d 73, 76 (1st Cir. 1989), "[t]he burden of demonstrating good cause for the removal of a default rest[s] with [the movant]." KPS, 318 F.3d at 14 (citing *Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 938 (1985)). X-treme, as the movant, had the burden of showing that good cause exists for the removal of the default. The Magistrate Judge properly applied First Circuit guidance in considering whether "good cause" has been shown: (1) the willfulness of the default; (2) the prejudice to the non-moving party in vacating default; and (3) whether a meritorious defense is presented. *See Coon*, 867 F.2d at 73 (citation omitted). As discussed below, the Magistrate Judge properly found that X-treme did not meet its burden under any of these factors.

## IV. <u>Argument</u>

### A. <u>The Magistrate Judge Correctly Found X-treme's Failure to Answer to be Willful</u>

The Magistrate Judge correctly found that X-treme acted willfully in allowing default to enter against it. X-treme took no steps whatsoever to preserve formally any defenses or its right to answer at a later date, despite having been properly served with

the Complaint and being fully aware of the pending suit. It then allowed the final deadline to pass without filing an answer or taking any action to meet its obligations under the Federal Rules of Civil Procedure. Based on this, the Magistrate Judge properly found that X-treme made a willful decision to ignore its obligation to answer the Complaint.[2] *See Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 75 (1st Cir. 2001) (conscious decision to ignore lawsuit and not answer was willful).

In addition, X-treme's willfulness is further evidenced by its conduct with regard to settlement in the days leading up to the entry of default. Despite the fact that the parties had in fact settled the case, and that X-treme had promised — not once, but twice — to execute the final version of the Settlement Documents and forward them to plaintiffs' counsel, it reneged on its promise yet again, five days after the deadline to answer had lapsed. The Magistrate Judge did not commit clear error in finding that X-treme acted willfully by not timely answering the Complaint.

B. **The Magistrate Judge Correctly Found that Plaintiffs Will Be Prejudiced**

The Magistrate Judge correctly found that Planet Eclipse will be prejudiced if the default is set aside. First, the Magistrate Judge correctly concluded that if the default were lifted, plaintiffs would be prejudiced because they would likely not be able to recoup all losses resulting from X-treme's continued sale of the infringing Xonic trigger frame, as the plaintiffs decided to forego pursuing injunctive relief in light of X-treme's apparent good faith settlement negotiations (which X-treme ultimately reneged on). As such, vacating the default will allow X-treme to continue to sell the infringing product

[2] X-treme admits that it was "cavalier in regards to its obligation to file its answer." (Def. Mem. at p. 6)

pending trial (absent a costly TRO or preliminary injunction motion by plaintiffs), resulting in continued ongoing harm to plaintiffs' good will.[3]

In addition, the Magistrate Judge properly found that the parties had in fact entered into a settlement agreement that was probably "second guessed" by X-treme or was beyond the authority of X-treme's counsel. As such, vacating the default will result in a "greater opportunit[y] for fraud or collusion," in the form of X-treme's continued sale of the infringing product, despite its numerous empty promises to cease this activity. *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998). The Magistrate Judge did not commit clear error in finding that Planet Eclipse would be prejudiced if the entry of default is set aside.

### C. **The Magistrate Judge Correctly Found that X-treme Failed to Show a Meritorious Defense**

The Magistrate Judge properly found that X-treme never articulated a meritorious defense to the allegations contained in the Complaint. All it could muster before the Magistrate Judge in its memorandum was the conclusory statement that "questions of infringement and unfair competition are inherently factually intricate and intense." (Def. Mem. in Support of Vacating Default at 3.) This statement was again repeated, in its memorandum to this Court, without offering any evidence of a meritorious defense. (Def. Mem. at 6.) The Magistrate Judge properly held that this bald statement simply is not evidence of a meritorious defense, as it was X-treme's burden to at least list "specific facts" which support a defense. *See Viera Avilés v. Suiza Dairy Corp.*, 206 F.R.D. 338, 341 (D.P.R. 2002). Accordingly, X-treme has failed to

[3] Contrary to X-treme's assertion in its memorandum that this case is in its "earlier" stages (Def. Mem. at pp. 4-5), plaintiffs have refrained from seeking injunctive relief since July, 2003, relying on X-treme's repeated assertions that it will cease selling the infringing product and enter into a binding settlement agreement and consent judgment.

meet its burden under this factor as well, particularly in light of its pre-suit agreement to revamp its product line to avoid infringing plaintiffs' intellectual property rights.

### D. <u>The Magistrate Judge Cited to Applicable Policy Reasons to Deny Defendant's Motion</u>

Finally, the Magistrate Judge was within his discretion to look to additional factors in deciding that the default should not be vacated. *Coon*, 867 F.2d at 75-76 (what constitutes "good cause" is within the "sound discretion" of the Court). The policy cited by the Magistrate Judge is sound: vacating the default would set a dangerous precedent that a defendant may flaunt the Federal Rules of Civil Procedure, ignore filing deadlines, repeatedly renege on its promises and still survive default. Surely, Rule 55 was designed to prevent just this sort of conduct, by providing an "[i]nvaluable incentive for parties to comply with court orders and rules of procedure . . . ." *KPS & Assocs.*, 318 F.3d at 13 (citation omitted).

## CONCLUSION

Accordingly, X-treme has failed to sustain its burden of proving that the Magistrate Judge's Memorandum and Order was clearly erroneous and contrary to law, and plaintiffs respectfully request that the Court reject the defendant's Rule 72(a) Objection and adopt the Memorandum and Order.

PLANET ECLIPSE, LLC and
PLANET ECLIPSE LIMITED,
By its attorneys,

Craig M. Scott, Esq. (#4237)
Ralph N. Gaboury, Esq. (#6638)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Date: January 11, 2005

**CERTIFICATION**

To:

Michael K. Glucksman, Esq.
109 Airport Road
Warwick, RI 02889

I hereby certify that a true copy of the within was sent by First Class mail to the above, on the 12th day of January, 2005.

*H:\Clients\Planet Eclipse\Pleadings\Response to Objection to Order FINAL.doc*