UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLANET ECLIPSE, LLC and PLANET ECLIPSE LIMITED, Plaintiffs, | : | |
| v. | : | C.A. No. 04-194T |
| X-TREME ENTERPRISES, INC., Defendant. | : | |

**PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(b)**

Plaintiffs, Planet Eclipse, LLC and Planet Eclipse Limited (collectively, "Planet Eclipse"), hereby move for sanctions against defendant X-treme Enterprises, Inc. ("X-treme") pursuant to Fed. R. Civ. P. 37(b) for X-treme's failure to comply with the Court's July 12, 2005 Order. The sanction Planet Eclipse requests is entry of default judgment in the amount of $158,200.00 and issuance of the permanent injunction requested in the Complaint. Alternatively, Planet Eclipse requests imposition of daily fines of $1,000.00 for each day that X-treme fails to comply with the Court's Order beginning on July 15, 2005 and continuing until X-treme complies with the Court's Order in all respects. In support of this motion, Planet Eclipse relies on the accompanying memorandum of law.

Respectfully submitted,

PLANET ECLIPSE, LLC and
PLANET ECLIPSE LIMITED,
By its attorneys,

Craig M. Scott, Esq. (#4237)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Date: August 11, 2005

**CERTIFICATION**

To:

Michael K. Glucksman, Esq.
109 Airport Road
Warwick, RI 02889

I hereby certify that a true copy of the within was sent by hand delivery to the above, on the 11th day of August 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PLANET ECLIPSE, LLC and PLANET ECLIPSE LIMITED, Plaintiffs, | : | |
| v. | : | C.A. No. 04-194T |
| X-TREME ENTERPRISES, INC., Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(b)**

Plaintiffs, Planet Eclipse, LLC and Planet Eclipse Limited (collectively, "Planet Eclipse"), submit this Memorandum in Support of Plaintiffs' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b). After Planet Eclipse filed a motion to compel, , the Court ordered defendant X-treme Enterprises, Inc. ("X-treme") to provide full and complete responses to Planet Eclipse's written discovery by July 15, 2005, to appear for deposition in Rhode Island on July 21, 2005 and to pay Planet Eclipse $480.00 in counsel fees it incurred in bringing the motion.[1] X-treme failed to comply with the Court's Order and should be sanctioned as a result. Planet Eclipse requests that the Court grant default judgment to Planet Eclipse in the amount of $158,200.00 and issue the permanent injunction prayed for in the Complaint. Alternatively, Planet Eclipse requests that the Court adjudge X-treme in contempt of its July 12, 2005 Order and impose daily fines in the amount of $1,000.00 per day commencing on July 15, 2005 and continuing until X-treme complies with the Court's Order in all respects.

---

[1] The Court provided Los Angeles-based X-treme with a "safe harbor" to save it the expense of traveling to Rhode Island for deposition. The Court ordered that X-treme's 30(b)(6) deposition would go forward in California on July 14, 2005 if X-treme provided full and complete interrogatory answers, written document responses and responsive documents by July 11, 2005. Although counsel for Planet Eclipse traveled to California and was available to depose X-treme on July 14, 2005, X-treme did not take advantage of the Court's generosity.

**STATEMENT OF FACTS**

Planet Eclipse initiated this action against X-treme on May 20, 2004, seeking injunctive relief and damages for trade dress infringement, false advertising, unfair competition, and copyright infringement related to X-treme's intentional copying of Planet Eclipse's product, packaging and user manual. The Clerk of the Court entered default in favor of Planet Eclipse on September 29, 2004 for failing to answer or otherwise respond to the Complaint. On February 28, 2005, the Court upheld Magistrate Judge Almond's Memorandum and Order denying X-treme's motion to vacate the entry of default and denied X-treme's Rule 72(a) objection.

On May 4, 2005, the Court granted Planet Eclipse's motion to engage in damages discovery and granted the parties 45 days to conduct discovery. Planet Eclipse served X-treme with its First Set of Interrogatories (the "Interrogatories") and First Request for Production of Documents (the "Document Requests") on May 10, 2005. After X-treme failed to respond by its June 10, 2005 deadline, Planet Eclipse moved to compel responses and to compel X-treme's appearance at a deposition pursuant to Fed. R. Civ. P. 30(b)(6). The Court scheduled a hearing on Planet Eclipse's motion to compel for July 7, 2005.

During the July 7, 2005 hearing, the Court granted Planet Eclipse's motion in part and denied it in part, and ordered X-treme: i) to provide "full and complete responses" to Planet Eclipse's interrogatories and document requests by July 15, 2005; ii) to present a qualified representative for deposition pursuant to Fed. R. Civ. P. 30(b)(6) in Rhode Island on July 21, 2005; and 3) to pay $480.00 to Planet Eclipse for the reasonable expenses incurred in making its motion, including attorneys' fees. During the hearing, the Court commented on X-treme's apparent disregard for its obligations under the Rules of Civil Procedure and the Local Rules of

this Court. The Court then indicated that it would consider holding X-treme in contempt if X-treme continued to shun its obligations. The Court issued its written Order on July 12, 2005.

X-treme transmitted Supplemental Responses to Plaintiffs' First Request for Production of Documents on July 11, 2005 and Supplemental Response to (sic) Eclipse's First Set of Interrogatories on July 12, 2005. These responses failed to comply with the Court's Order that X-treme provide "full and complete responses" to Planet Eclipse's discovery requests. In fact, in response to ten separate document requests propounded by Planet Eclipse, X-treme produced a grand total of two documents consisting of five pages. These documents purport to be X-treme's "Inventory Monthly Sales Inquiry" for 2003-04 and appear to contain a tabulation of the number of Infringing Products sold in those calendar years. X-treme produced no further documents. Although X-treme waived all objections to the Planet Eclipse's First Request for Production of Documents by failing to serve timely responses, X-treme objected to each document request on the basis that the documents requested were "confidential, proprietary and/or a trade secret."

X-treme's July 12, 2005 answers to Planet Eclipse's First Set of Interrogatories were equally non-compliant. X-treme disclosed that the price of the first Infringing Xonik frame sold was "$280/each" and referred Planet Eclipse to the two "Inventory Monthly Sales Inquiry" reports referenced above for the total quantity of Infringing Products sold and the dates of such sales. Those documents purport to show that X-treme sold a total of 565 Infringing Products in 2003 and 2004. X-treme stated that it misplaced the documents necessary to respond to the remainder of Planet Eclipse's interrogatories.

Planet Eclipse wrote to counsel for X-treme on July 12, 2005 and detailed the deficiencies in X-treme's responses to Planet Eclipse's discovery requests. (A true copy of the

July 12, 2005 letter is attached as Exhibit A hereto). X-treme did not produce any additional documents or information in response to the letter.

Counsel for Planet Eclipse traveled to Los Angeles, California and was available to take the Fed. R. Civ. P. 30(b)(6) deposition of X-treme on July 14, 2005.[2] As X-treme failed to provide meaningful responses to Planet Eclipse's discovery requests in advance of the deposition, the deposition was rescheduled for July 21, 2005 in Providence, Rhode Island. Although X-treme still had not provided full and complete discovery responses by July 21, 2005, Planet Eclipse agreed to conduct the deposition on that date in order to move this case forward. Notwithstanding Planet Eclipse's intention to proceed with the Court-ordered deposition, X-treme refused to make a representative available for deposition on July 21, 2005.

Simply stated, X-treme has not complied with the Court's July 12, 2005 Order. X-treme failed to provide full and complete discovery responses by July 15, 2005, failed to appear for its Fed. R. Civ. P. 30(b)(6) deposition and has not paid Planet Eclipse the Court-ordered $480.00 in reasonable expenses incurred in connection with its motion to compel. X-treme has thwarted at every turn Planet Eclipse's efforts to engage in damages discovery and bring this case to a final resolution.

## ARGUMENT

As set forth above, X-treme failed to comply with the Court's Order compelling discovery responses, the taking of X-treme's 30(b)(6) deposition and the payment of $480.00 for Planet Eclipse's reasonable expenses in bringing its motion to compel. Consequently, the Court should enter default judgment against X-treme in the amount of $158,200.00, the amount of X-treme's total revenue from sales of the Infringing Products and permanently enjoin X-treme from

---

[2] Plaintiffs' counsel coordinated this trip with a deposition in another case to be taken the following day in Los Angeles.

future misconduct.[3] If, notwithstanding X-treme's pattern of failing to fulfill its obligations under the Fed. R. Civ. P. and disregard of this Court's Order, the Court is not prepared to enter default judgment, the Court should adjudge X-treme in contempt and order payment of daily fines in the amount of $1,000.00 and impose such other sanctions as it deems appropriate.

**A. Available Sanctions For Failure To Comply With The Court's Order.**

Pursuant to Fed. R. Civ. P. 37(b), the Court may impose a variety of sanctions for X-treme's failure to comply with the Court's Order. These sanctions include: i) holding X-treme in contempt (Fed. R. Civ. P. 37(b)(1) and 37(b)(2)(D)); ii) ordering that the matters regarding which the order was made (i.e., Planet Eclipse's damages) or other designated facts be taken as established in accordance with Planet Eclipse's claims (Fed. R. Civ. P. 37(b)(2)(A)); iii) prohibiting X-treme from opposing Planet Eclipse's claims or from introducing designated matters in evidence (Fed. R. Civ. P. 37(b)(2)(B)); or iv) rendering a judgment by default against X-treme (Fed. R. Civ. P. 37(b)(2)(C)). See also United States v. Klimavicius, 847 F.2d 28, 34-35 (1st Cir. 1988).

**B. Standard For Entry Of Default Judgment.**

Although the entry of default judgment is a severe sanction, see Estates of Ungar v. P.L.O., 325 F. Supp. 2d 15, 61 (D.R.I. 2004), it is appropriate in this case based on X-treme's refusal to participate meaningfully in discovery and permit the Court to determine the amount of damages X-treme must pay to Planet Eclipse. In Estates of Ungar, as in this case, the defendants against whom default judgment entered failed to file timely answers, failed to respond to discovery and failed to comply with the Court's order compelling discovery. The Magistrate Judge in Estates of Ungar looked to the following six-factor test employed in the Third Circuit in deciding whether to enter default judgment: 1) the extent of the party's, as opposed to its

[3] This is the lower of two different revenue numbers supplied by X-treme, utilized for purposes of this motion only.

counsel's, responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) the disobedient party's history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of alternative sanctions, and 6) the meritoriousness of the disobedient party's claim or defense. See id. at 61. The Magistrate Judge in Estates of Ungar concluded that entry of default judgment was appropriate and his decision was adopted by the District Judge and later affirmed by the First Circuit. See 325 F. Supp. 2d 15, 28 (D.R.I. 2004), aff'd Efrat Ungar v. P.L.O., 402 F.3d 274, 294 (1st Cir. 2005). The amount of the default judgment entered by the Court in Estates of Ungar exceeded $116 million.

### C. Justification For Entry Of Default Judgment In This Case.

X-treme's repeated failure to comply with its obligations under the Fed. R. Civ. P. and this Court's Order justify the entry of default judgment in this case. Applying the test utilized in Estates of Ungar indicates that anything short of entry of default judgment will only further embolden X-treme and will prevent entry of final judgment and the conclusion of this case.

First, there is no reason to believe that X-treme's failure to comply with the Court's Order is attributable to counsel rather than X-treme itself. See Estates of Ungar, 325 F. Supp. at 61. The deficient discovery responses are signed by an officer of X-treme and were transmitted to Planet Eclipse by X-treme's counsel on the same day that they were signed.

Second, with respect to the prejudice to Planet Eclipse, X-treme's failure to provide the requested information has prevented Planet Eclipse from calculating its damages and moving for entry of final judgment—essentially bringing this case to a halt. While X-treme provided certain self-serving and conclusory financial information that purported to show that it received $167,267.00 in revenue and costs of goods sold of $429,023.00 from sales of Infringing Products

for a net loss of $291,747.00, X-treme failed to provide any documents to support these figures and the figures are dubious at best.[4] Planet Eclipse is entitled to test the veracity of X-treme's figures against the original source documents, particularly in light of the following: 1) on June 21, 2005, X-treme claimed that it relied on "all company documents" in calculating its ill-gotten profits; 2) three days later, on June 24, 2005, X-treme stated that the figures provided on June 21, 2005 were "estimates"; 3) on July 12, 2005, X-treme claimed that it misplaced the documents necessary to respond to the majority of Planet Eclipse's interrogatories; and 4) the only two documents produced by X-treme purport to contain the number of units sold of the Infringing Product only and contain no financial information. X-treme's failure to produce the original source documents results in the ultimate prejudice to Planet Eclipse because it is unable to calculate its damages—the only issue remaining in this case.

Third, X-treme has a history of dilatoriness throughout this litigation as well. X-treme failed to answer the Complaint despite numerous extensions granted by Planet Eclipse. After the parties negotiated and agreed on a final settlement agreement in September 2004, X-treme refused to execute the agreement and attempted to change the terms of the agreement. More recently, X-treme failed to respond to Planet Eclipse's First Set of Interrogatories and First Request for Production of Documents within the 30 days provided by Fed. R. Civ. P. 33 and 34, failed to comply with the Court's Order to provide full and complete responses to Planet Eclipse's discovery requests by July 15, 2005, appear for its deposition on July 21, 2005 and pay Planet Eclipse the expenses of bringing its motion to compel.

Fourth, X-treme's refusal to comply with the Court's July 12, 2005 Order must be considered willful and done in bad faith. During the hearing on Planet Eclipse's motion to

[4] X-treme would have the Court and Planet Eclipse believe that it incurred expenses of nearly 2.5 times its revenue for a product that it pirated from a competitor. Notably, X-treme refused to produce any documents to support these incredible expenses and has refused to appear for its 30(b)(6) deposition and address these issues under oath.

compel, the Court made it clear that X-treme's disregard for the Fed. R. Civ. P. and the Court's authority would not be tolerated. Under the circumstances and in light of X-treme's history of dilatoriness, nothing more than X-treme's refusal to comply with the Court's Order should be required to demonstrate willfulness or bad faith. See Conetta v. National Hair Care Centers, Inc., 236 F.3d 67, 75 (1st Cir. 2001) (knowledge of obligation to respond and subsequent failure to do so are sufficient proof of willfulness absent credible testimony to the contrary)(cited by Magistrate Judge Almond at pp. 5-6 of the December 12, 2004 Memorandum and Order).

Fifth, as for the effectiveness of other sanctions, it is difficult to imagine that any alternative sanction will result in X-treme providing information sufficient to permit an accurate assessment of damages. X-treme blamed its supposed inability to answer Planet Eclipse's discovery requests on its misplacement of the relevant documents. Thus, entry of default judgment appears to be the only sanction that will allow entry of final judgment in this case if X-treme's own explanations are to be believed.

Sixth, Magistrate Judge Almond considered the meritoriousness of X-treme's defense in deciding X-treme's motion to set aside default. The Court concluded that X-treme had not presented evidence of a meritorious defense. (See December 12, 2004 Memorandum and Order at p. 8.). This Court denied X-treme's appeal of Magistrate Judge Almond's decision on February 28, 2005. There is no reason to revisit the issue now.

In sum, X-treme's conduct in this case and the resulting prejudice to Planet Eclipse justifies entry of default judgment. The amount of such judgment is set forth below.

**D. Calculation Of Amount Of Default Judgment.**

The amount of the default judgment entered against X-treme should be based on the amount of X-treme's revenue from sales of the Infringing Product. This amount can be

calculated by multiplying the $280.00 unit price for the Infringing Product supplied by X-treme in its July 12, 2005 supplemental interrogatory answers by the number of units X-treme sold in 2003 and 2004 as evidenced by the two documents X-treme produced in this litigation.[5] X-treme's documents indicate that it sold 280 Infringing Products in 2003 and 285 Infringing Products in 2004, for a total of 565 units. Multiplying 560 units by the $280.00 unit price produces a total revenue figure of $158,200.00. X-treme should not be permitted to deduct any expenses from this total revenue figure because its own disregard for this Court's Order and its obligations under the Fed. R. Civ. P. is the sole reason that an accurate damages assessment cannot be performed. X-treme should not be permitted to benefit from its malfeasance.

As stated in Taylor Made Golf Co. v. Carsten Sports, Ltd., 175 F.R.D. 658, 663 (S.D. Cal. 1997), it is difficult to image how a trade-dress-infringement plaintiff could establish precise figures of the defendants' ill-gotten profits where the defendants "refuse to respect the summons of a United States court or who are entirely uncooperative." The Taylor Made court employed "relaxed standards of proof" and entered default judgment based on the plaintiff's estimates of the defendants' profits even though many of the assumptions underlying the estimates lacked support. Here, the Court can use X-treme's own sales and revenue numbers to calculate the amount of the default judgment, which appears to Planet Eclipse to be a preferable alternative to the estimates utilized in Taylor Made.[6]

---

[5] Planet Eclipse assumes for purposes of this motion only that X-treme's figures are correct. In light of X-treme's misconduct in this case, Planet Eclipse has doubts concerning the accuracy of any information provided by X-treme.

[6] The methodology utilized by Planet Eclipse produces a reasonable damages figure somewhere between the results reached by the courts in Taylor Made and Estates of Ungar. In Taylor Made, the court accepted the plaintiff's estimates of revenue for an entire counterfeiting industry (of $100 million), allocated a percentage of the revenue to the particular defendant and then applied a 25% profit margin. See Taylor Made, 175 F.R.D. at 662. In Estates of Ungar, the court trebled the plaintiffs' damages after the defendants waived a damages hearing. See Estates of Ungar, 325 F. Supp. 2d at 66. Planet Eclipse seeks default judgment in the amount of X-treme's revenue, $158,200.00, as opposed to an estimated profit margin as in Taylor Made, but has not asked the Court to treble this amount as authorized by 15 U.S.C. § 1125 (the Court in Estates of Ungar trebled damages pursuant to the operative

**E. If The Court Is Reluctant To Enter Default Judgment, The Court Should Adjudge X-treme In Contempt And Impose Daily Fines In The Amount Of $1,000.00.**

If the Court is reluctant to enter default judgment as a sanction for X-treme's actions, Planet Eclipse suggests that it adjudge X-treme in contempt of the Court's July 12, 2005 Order and impose daily fines of $1,000.00 commencing on July 15, 2005 (the latest of two dates by which X-treme was required to provide full and complete discovery responses) until X-treme complies with the Court's Order in all respects. This would result in fines of $27,000.00 through August 11, 2005. X-treme's decision to ignore the Court's Order to pay Planet Eclipse the much smaller sum of $480.00 for Planet Eclipse's expenses in connection with its motion to compel leads Planet Eclipse to believe that anything less than entry of default judgment will be ineffective. Nonetheless, a substantial monetary incentive would be the next best alternative.

## CONCLUSION

For the foregoing reasons, Planet Eclipse respectfully requests that the Court grant its Motion for Sanctions.

PLANET ECLIPSE, LLC and
PLANET ECLIPSE LIMITED,
By its attorneys,

Craig M. Scott, Esq. (#4237)
DUFFY SWEENEY & SCOTT, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701 (Facsimile)

Date: August 11, 2005

statute in that case). Planet Eclipse's approach is reasonable, particularly since the inability to obtain an accurate damage figure is due to X-treme's misconduct.

**CERTIFICATION**

To:

Michael K. Glucksman, Esq.
109 Airport Road
Warwick, RI 02889

I hereby certify that a true copy of the within was sent by hand delivery to the above, on the 11th day of August 2005.

DUFFY SWEENEY & SCOTT, LTD
BUSINESS LAW & LITIGATION

*Kurt W. Hague*
*khague@duffysweeney.com*

July 12, 2005

***BY FACSIMILE AND FIRST CLASS MAIL***

Michael K. Glucksman, Esq.
109 Airport Road
Warwick, RI 02889

Re: Planet Eclipse LLC and Planet Eclipse Limited v. X-treme Enterprises, Inc.,
U.S.D.C. No. 04-0194-T

Dear Mike:

I am writing to follow up on my letter of earlier today as well as our telephone conversation this afternoon, and to detail the deficiencies in X-treme Enterprises, Inc.'s ("X-treme") discovery responses to date. As we discussed and agreed on the phone, the supplemental discovery responses provided by X-treme over the last two days do not comply with Judge Torres' Order that X-treme was required to provide full and complete discovery responses by close of business on July 11, 2005 as a prerequisite to the deposition of X-treme's Fed. R. Civ. P. 30(b)(6) representative in California on July 14, 2005. Due to X-treme's deficient discovery responses, the deposition will not go forward this Thursday.

In order to comply with Judge Torres' Order, X-treme must provide full and complete answers to Planet Eclipse's First Set of Interrogatories (the "Interrogatories"), full and complete responses to Planet Eclipse's First Request for Production of Documents (the "Requests") and all responsive documents by the close of business on July 15, 2005. The deposition of X-treme's 30(b)(6) representative will then be taken in Rhode Island on July 21, 2005.

In order to prevent any misunderstandings concerning what X-treme is required to provide by way of discovery responses, a discussion of the shortcomings in X-treme's discovery responses is set forth below.

X-treme's Answers to Planet Eclipse's Interrogatories

Judge Torres ordered X-treme to provide full and complete answers to Planet Eclipse's Interrogatories, in no uncertain terms. X-treme's prior interrogatory answers dated June 21, 2005 and June 24, 2005 ignored the Instructions included with the Interrogatories (the "Instructions"),

raised inapplicable objections, were inappropriately limited through a "preliminary statement" and failed to provide the majority of the information requested. X-treme served additional supplemental interrogatory answers this morning and again asserted an inappropriately-limiting "preliminary instruction" and failed to provide most of the requested information. As we have discussed, X-treme waived all objections by failing to serve answers within the time provided by Fed. R. Civ. P. 33 and must provide full and complete answers to each of Planet Eclipse's Interrogatories. To assure compliance with Judge Torres' Order, we request that X-treme review the Instructions prior to answering and then provide all of the information called for by each Interrogatory. An Interrogatory-by-Interrogatory analysis is provided below to prevent any confusion.

Interrogatory No. 1: In its original unsworn answers to Interrogatory No. 1, X-treme provided the name of a single individual, Tiffany Nguyen, who appears to be the person providing information and documents in response to Planet Eclipse's discovery requests. Pursuant to the Instructions, in connection with a request to identify a person, "to identify" means to provide the person's: 1) full and customarily used name; 2) present or last know residence and business address and telephone number and electronic mail address; and 3) present or last known employer and position(s) held with that employer. X-treme failed to provide the required information for Tiffany Nguyen. In addition, in the Declaration of Tiffany Nguyen dated June 24, 2005, X-treme stated that Ms. Nguyen is X-treme's operations manager and that she interviewed other company employees and based "the following estimates" on the data the other employees provided. X-treme must "identify," according to the aforementioned Instructions, each of those other employees. X-treme must provide an actual sworn answer to Interrogatory No. 1 and the remainder of Planet Eclipse's Interrogatories, not "estimates."

Interrogatory No. 2: In response to Planet Eclipse's request to identify all documents relied on in answering the Interrogatories, X-treme answered "[a]ll company records". If X-treme in fact relied on all of its company records, pursuant to the Instructions it must provide, for each document: 1) the date of its creation, execution and receipt; 2) its author and/or signatory; 3) its addressee and every other recipient; 4) its type or nature (e.g., letter memorandum, etc.) including its subject matter; 5) the name and address of the custodian of the document; 6) its substance; and 7) the disposition as to any document which was, but no longer is, in the possession, custody or control of X-treme. We find X-treme's claim to have relied on all company records incredible, as many of the company's records surely relate to products other than the Infringing Product. Nonetheless, X-treme must provide the information set forth above for each and every document relied on.

Interrogatories Nos. 3 and 4: Planet Eclipse asked X-treme to identify the quantity, dollar amount and date of X-treme's first sale of the Infringing Product in Interrogatory No. 3, and to identify the same information for each subsequent sale of the Infringing Product in Interrogatory No. 4. In X-treme's original answers, it objected on the grounds that Interrogatories Nos. 3 and 4 were "vague" and that X-treme "does not understand the question as propounded." Then, in the supplemental answers we received this morning, X-treme stated, in response to Interrogatory No. 4, that "[t]he price of the first Xonik frame sold was $280/each." X-treme responded to Interrogatory No. 4 by stating that "[t]he quantity and date of sale are set out in the monthly sales report inquiry of 2003 and 2004" attached as Exhibit 1. X-treme's answers are not sufficiently responsive. In order to provide a full and complete answer to Interrogatory No. 3, X-treme must provide: 1) the date (meaning day, month and year) that it sold the Infringing Product for the first time; 2) the number of

units of the Infringing Product that X-treme sold on that date; and 3) the price per unit of the Infringing Product sold on that date. In order to fully and completely answer Interrogatory No. 4, X-treme must provide the same information with the same level of detail for each subsequent sale of the Infringing Product. Planet Eclipse has a good faith belief that the Infringing Product was sold at varying prices, none of which were provided in the answers to Interrogatory No. 4. Finally, X-treme's attempt to rely on a document in answering Interrogatory No. 4 does not comply with Fed. R. Civ. P. 33(d) because the information requested cannot be derived or ascertained from the documents identified.

Interrogatory No. 5: X-treme responded in its original answers that "Defendant has no plans to sell the product." If X-treme has no plans to sell the Infringing Product in the future, it should use the defined term "Infringing Product" and repeat its answer in a properly sworn set of interrogatory answers. It is not clear that X-treme is referring to the Infringing Product, which is defined in the Complaint as "an electronic trigger frame it calls the 'Xonic Electronic Marker.'" This definition includes the specified trigger frame when it is sold in any form, alone or in combination with other components and even as part of a fully-assembled product. At a minimum, X-treme should clarify its answer to Interrogatory No. 5.

Interrogatories Nos. 6-8: X-treme objected to these Interrogatories in its original answers on the grounds that they were "vague, over broad, unduly burdensome, not relevant and not likely to lead to the discovery of admissible evidence." X-treme further objected on the ground that the Interrogatories sought information that was "confidential, proprietary and/or trade secret." As discussed with you on the telephone and above, X-treme waived all objections by failing to serve timely answers, so X-treme's original objections are not valid. In X-treme's supplemental answers that were served this morning, it offered a completely different set of answers to Interrogatories Nos. 6-8. X-treme claimed that the documents necessary to respond to these Interrogatories are misplaced and X-treme therefore lacks the information to answer. It is surprising that X-treme claims to have misplaced all documents necessary to provide a list of: 1) all customers to whom it marketed, advertised, promoted and/or sold the Infringing Product; 2) the total sales of the Infringing Product to each customer identified; and 3) each vendor, component manufacturer or subcontractor that supplied parts, labor or materials for the Infringing Product. If X-treme in fact misplaced all such documents, it must still perform a reasonable inquiry and provide the requested information for each customer and vendor that it can ascertain. See Fed. R. Civ. P. 26(g)(2). A party's and its lawyer's signatures on discovery responses is a certification that such an inquiry has been performed. It is not clear that X-treme performed any inquiry in answering Interrogatories Nos. 6-8.

Interrogatories Nos. 9-13: X-treme provided a minimal amount of financial information in its original answers to these Interrogatories, tending to show that X-treme lost money on sales of the Infringing Product. In the June 24, 2005 Declaration of Tiffany Nguyen, however, she states that the information provided is not precise, but is comprised of "estimates." Providing estimates is not sufficient under the Fed. R. Civ. P. X-treme is required to perform a reasonable inquiry and provide accurate information in response to the Interrogatories. In addition, it appears that the figures X-treme provided are inconsistent with information it provided in the early stages of this case. Finally, X-treme appears to limit its answers to information relating to "Xonik frames," and it is not clear that X-treme is referring to the Infringing Product, which is defined in the Complaint as "an

electronic trigger frame it calls the 'Xonic Electronic Marker.'" This definition includes the specified trigger frame when it is sold in any form, alone or in combination with other components and even as part of a fully-assembled product. X-treme must provide responsive answers to these Interrogatories.

<u>X-treme's Written Responses to Planet Eclipse's First Request for Production</u>:

As you are aware, X-treme responded to Planet Eclipse's First Request for Production (the "Requests") by objecting to each Request and stating that it would produce "available unprivileged documents in its possession that are responsive" subject to an appropriate protective order. First, by failing to provide timely responses, X-treme waived all objections to the Requests. Thus, as required by Judge Torres, X-treme must provide full and complete answers to all of the Requests and must provide all responsive documents. In X-treme's supplemental responses to the Requests that were served yesterday, it raised the same objections and again refused to produce the documents. Oddly, X-treme did provide a 3-page document and a 2-page document that appear to be some sort of rudimentary sales charts for 2003 and 2004. These documents, while appearing to be responsive, are not sufficient to satisfy X-treme's obligations under Judge Torres' Order or the Fed. R. Civ. P. While the parties have discussed a protective order and exchanged a document that appears suitable, X-treme does not have the right to refuse to produce additional responsive documents because a protective order has not been signed and entered by the Court. Judge Torres did not make his Order that X-treme provide full and complete responses dependent on the parties' agreement on a protective order, and X-treme failed to move for a protective order in a timely manner. X-treme is required to comply with Judge Torres' Order and produce all responsive documents by this Friday, July 15, 2005.

The bottom line is that X-treme is required, by Judge Torres' Order and the Fed. R. Civ. P., to provide full and complete responses to each Interrogatory and each Request. It has failed to do so. We will be forced to return to Court if this is not remedied before the Judge's deadline of close of business this Friday, July 15, 2005.

Please let me know if you have any questions.

Very truly yours,

Kurt W. Hague

cc: Craig M. Scott, Esq.